**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Warejko Manning,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-22-00996-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Nicole Warejko Manning's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Social Security disability benefits. (Doc. 1). This appeal is fully briefed. (Doc. 19, Doc. 21). Plaintiff's opening brief was filed after the extended deadline, however. Consequently, Plaintiff has filed a motion to accept a late opening brief. (Doc. 20). The Court will now rule.

**I.   MOTION TO ACCEPT LATE BRIEF**

When moving for the Court to accept a late brief a party must show that they failed to timely file because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) (stating that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."). There is a four-part framework that guides the excusable neglect analysis. A Court must look to 1. the danger of prejudice to the opposing party, 2. the length of delay and its impact on the proceedings, 3. the cause of the delay, and 4.

whether the movant acted in good faith. *See Bateman v. U.S. Postal Service*¸ 231 F.3d 1220, 1223–24 (9th Cir. 2000). These factors are not exclusive, however. *See id.* at 1224.[1]

Clearly there was excusable neglect in this case. First, the opposing brief has already been filed and the opposing party has already responded to it. (*See* Doc. 21). Consequently, there is little prejudice to the Defendant here. Furthermore, because the appeal is fully briefed, there will be no delay. Additionally, the delay was caused because the Claimant was living in temporary housing and did not have easy access to the location where the Court's documents were being sent. Thus, she allegedly did not receive this Court's order extending time to file until two days before the brief was due. (*See* Doc. 20). Further, there is no indication that she delayed her filing for any nefarious reasons. She was, it seems, acting in good faith. Finally, the government has not opposed her brief on grounds of the late filing. Thus, this Court will grant Plaintiff's Motion to Consider Timely her opening brief. (Doc. 20).

## II. BACKGROUND

The issues on appeal, as far as this Court can tell, are weather Claimant had the opportunity to have all of her evidence received and evaluated, and whether the Administrative Law Judge ("ALJ") committed harmful error in his Residual Functional Capacity ("RFC") analysis.

### a. Factual Overview

Nicole Warejko ("Claimant") filed for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act in September of 2019. (*See* Doc. 15-2 at 43). The Claimant alleged a number of impairments including back disorders, alcoholic liver disease, cardiovascular disease, migraine headaches, and mental impairments. (*See id.* at 46). She asserts that her disability began on September 15, 2018. (*See id.* at 43). Her date last insured was June 30, 2021. (*See id.* at 45). Her claim was first denied in December of 2019, and again upon reconsideration in May of 2020. (*See id.* at

---

[1] It should be noted that *Bateman* concerned the excusable neglect standard under Rule 60(b). Yet the Ninth Circuit has held that the same analysis applies to Rule 6(b) cases. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

- 2 -

43). A hearing before an ALJ was held on January 28, 2021. (*See id.*). The ALJ denied her claim on May 03, 2021. (*See id.* at 54). The SSA Appeals Council then affirmed the ALJ's opinion and adopted that decision as the final decision of the Commissioner. (*See id.* at 2). The Claimant now appeals that decision.

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related

symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Applying the first step, the ALJ determined that the Claimant had not engaged in any substantial gainful activity since September 15, 2018. (Doc. 15-2 at 46).

At step two, the ALJ found that Claimant had a number of severe impairments as defined under 20 C.F.R. § 404.1520(c). These included disorders of the back, chronic C. difficile, alcoholic liver disease, posttraumatic stress disorder, generalized anxiety disorder, major depressive disorder, attention deficit-hyperactivity disorder, panic disorder, and other alcohol related disorders. (*See id.* at 46). The ALJ also found that Claimant had other non-severe impairments. Finally, she noted that Claimant alleged a number of other disorders but that the record did "not have enough clinical support for [those] ... to be severe." (*Id.*).

Turning to step three, the ALJ found that none of the severe impairments, or any combination of impairments, met or medically equaled any of the listed impairments. None of the Claimants spine related disorders met the listing because there was no evidence that a nerve root or her spinal cord was compromised. (*See id.* at 47). There was also insufficient evidence for many of the other impairments. Particularly with regard to the mental

impairments, the ALJ found that the Paragraph B criteria were not met. (*See id.* at 47–48). The ALJ found that the mental impairments did not cause either two marked limitations or one extreme limitation. (*See id.* at 48).

At step four, the ALJ found that Claimant had the RFC to perform medium work with some additional limitations. (*See id.*). The ALJ looked to the medical findings and medical opinions in the record. (*See id.* at 48–49). Although she found that Claimant's medically determinable impairments could be reasonably expected to cause the alleged symptoms, she also found that Claimant's testimony regarding the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the evidence in the record. (*See id.* at 49). Generally, the ALJ found that the treatment records conflicted with Claimant's subjective symptom and pain testimony. Key to her determination was that she found that alcohol use triggered Claimant's physical symptoms, those "symptoms resolved with cessation of alcohol use, and when the claimant was receptive to treatment, she maintained sobriety." (*Id.*). Furthermore, the ALJ found that even when Claimant was using alcohol, Claimant "continued to present with mostly normal physical findings." (*Id.* at 50). Finally, the records showed "a receptiveness to care and effectiveness of treatment." (*Id.* at 52). Thus, the ALJ found an RFC indicating medium work.

Finally, looking at step five, the ALJ found that although Claimant could not perform past relevant work, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*See id.* at 53). Given Claimant's RFC, the ALJ determined, with the aid of a vocational expert, that Claimant could perform the jobs of floor cleaner, cleaner II, or packager. (*See id.* at 53–54). Consequently, the ALJ found that Claimant was not disabled. (*See id.* at 54).

### III.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). Substantial evidence means "more than a scintilla ... but less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard, courts look at "an existing administrative record and ask[] whether it contains sufficient evidence to support the [ALJ's] ... factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

When specifically assessing DIB claims, the ALJ's inquiry is limited to determining whether the claimant had a disability in the period between the alleged onset date and the date last insured. The main source of evidence for this is medical records and testimony from or about this period. When undertaking this assessment, this Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility, however. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, this Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

In assessing whether the Appeals Council properly considered new evidence, this Court must assess whether the new evidence is material to the disability determination. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). The regulations state that "The Appeals Council will review a case at a party's request or on its own motion if ... the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decisions, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The claimant must also show good cause for not submitting the evidence directly to the

ALJ. *See id.* §404.970(b). In assessing whether evidence is material, the Court must determine whether the evidence bears "directly and substantially on the matter" involved in the case. *Mayes*, 276 F.3d at 462 (internal quotations omitted). Finally, the evidence must show that a condition existed during the relevant period. *See id.*

## IV. DISCUSSION

Claimant's main claim is that she was not given the opportunity to present certain evidence to the ALJ. She was able to present that evidence to the Appeals Council, however. The Appeals Council reviewed the evidence and found that there was no reasonable probability that it would have changed the outcome of the administrative hearing. This Court finds that the Council did not commit any error in reaching that conclusion. Claimant presented twelve additional documents to the ALJ for review, which she claimed established the existence of a disability during the relevant time period. (*See* Doc. 15-2 at 62–76, Doc. 15-3 at 76). She also submitted a short statement from her husband. (*See* Doc. 15-2 at 60). While some of these records may be material, there is no reasonable probability that this evidence would have changed the outcome of the decision. Consequently, this Court finds that the Appeals Council acted appropriately in affirming the ALJ's decision.

First, Claimant submitted a one paragraph statement from her husband which stated that her mental issues give her anxiety about leaving her home. (*See id.* at 60). While this testimony does seem to be material, it would not have changed the outcome of the administrative hearing because it is duplicative of testimony given by the Claimant herself. (*See id.* at 49). The ALJ considered this information and rejected it because it was contradicted by other evidence in the record. (*See id.*). Because the ALJ had already considered this testimony as given by Claimant, there is no reasonable possibility that this testimony from her husband would have changed the outcome.

Second, turning to the new medical records provided, most of them are either duplicative of medical examinations already included in the record before the ALJ or post-date the relevant period, and therefore should not be considered in determining whether a

disability existed during that period. The first new piece of evidence submitted is the report of a neuropsychological evaluation that was conducted after the relevant period. (*See* Doc. 15-2 at 62). Consequently, it is irrelevant to the question of whether Claimant was disabled during that period. Thus, it would not have changed the outcome of the administrative hearing. It merely describes Claimant's mental state at the time the examination was taken. It says nothing about her mental state in the period between her alleged onset date and the date of the hearing. While it may be relevant to the determination of whether she was disabled after the date of the hearing, for purposes of the period at issue here, it is not relevant. The same is true of two of the documents from Partners in Recovery. (*See* Doc. 15-3 at 27–39). Because they post-date the hearing date, they are not relevant to whether Claimant was disabled during the period at issue.

The Appeals Council also found that the evidence submitted from COPA Health would not change the outcome of the decision. (*See id.* at 3). The first COPA document, (Doc. 15-3 at 3–6), does not evidence the level of severity of her symptoms that Claimant testified to. The treatment courses specified are generally light and fit with a finding by the Appeals Council that the outcome of the administrative hearing would not be altered. The second COPA document, (*See id.* at 7–18), is a duplicate of a document that was in the record before the ALJ. (*See* Doc. 15-24 at 105–116). Thus, it is not new let alone evidence that would change the outcome of the administrative hearing.

The fourth additional piece of evidence is the long form version of a document that was already included in the record. The new document details an evaluation done by a doctor at Bayless to determine whether Claimant met the eligibility criteria to receive Serious Mental Illness services. (*See* Doc. 15-3 at 19). This evaluation determined that she was eligible. (*See id.*). Documents already in the record, however, noted that this examination found that she was eligible to receive Serious Mental Illness services. (*See* Doc. 15-21 at 119) The same is true of a "new" document submitted from The Crisis Response Network. (*See* Doc. 15-3 at 71–73). It contains the same information as the document in the record indicating that she was eligible to receive Serious Mental Illness

services. Consequently, the Appeals Council determined that there was no reasonable probability that these documents would have changed the outcome of the administrative hearing. This Court agrees with that assessment.

Claimant also submitted a Health Risk Assessment from Mercy Maricopa. (*See* Doc. 15-3 at 23). This document also contains no new evidence. It simply consists of subjective descriptions of daily life and symptom severity that are quite similar to the testimony that Claimant gave at the hearing. The Appeals Council concluded that this did not show a reasonable probability that the outcome of the administrative hearing would be different. This Court finds that this conclusion was also reasonable.

There were also a number of documents submitted that contained substantially similar information to documents already in the record. The first are psychiatric progress notes from visits to Partners in Recovery. (*See id.* at 40 – 51). Despite the fact that they are from visits that occurred after the visits documented in the Partners in Recovery psychiatric progress notes contained in the record, they contain substantially similar information and document the same conditions and severity of symptoms. Claimant also submitted a number of other psychiatric evaluation notes from Partners in Recovery that were exact duplicates of documents already in the record. (*See id.* at 52–67). Additionally, she submitted nurse documentation from COPA Health, which noted two mental health disorders but stated that she was generally pleasant and cooperative. (*See id.* at 68–70). The information noted in this document is not different from the information contained in other assessments that the ALJ explicitly discussed in his opinion. (*See* Doc. 15-2 at 51). Again, the Appeals Counsel reasonably concluded that these documents would not have changed the outcome of the administrative hearing.

Finally, Claimant submitted documents relating to a sleep apnea study. (*See* Doc. 15-3 at 74–76). Yet, as Defendants note, sleep apnea was not alleged as an impairment in the original hearing. (*See* Doc. 21 at 17). Thus, it has no relevance to the outcome of the original hearing because it was not alleged by the Claimant. Overall, this Court concludes that the Appeals Council did not err in its determination that the "new" evidence did not

have a reasonable probability of changing the outcome of the administrative hearing.

The remainder of Claimant's opening brief merely relates her history and various alleged impairments. It does not allege any legal or factual errors, however. As Defendants assert, "Plaintiff's arguments on judicial review provide no specific challenges to the ALJ's consideration of the evidence." (*Id.* at 13). She discusses her past medical issues as well as numerous traumatic experiences she suffered throughout her life. (*See* Doc. 19 at 2). But she does not claim that the ALJ erred in assessing them. In the "Warnings" section of the scheduling order this Court pointed out that Claimant was required to make an argument. "[A] general allegation that the Commissioner committed legal error," the order reads, "or that the Commissioner's determination is not supported by substantial evidence, is insufficient to raise the issue for review." (Doc. 6 at 3). The Claimant must raise arguments. It is not the Court's role to manufacture arguments on Claimant's behalf. Here, Claimant failed to articulate any specific arguments for this Court to assess. This is an independent ground to affirm the Commissioner.

Yet, Defendants construe Claimant's discussion of her alleged impairments as a claim that the ALJ erred in her RFC assessment. Assessing her brief as one that raises such a claim, this Court finds that the ALJ had substantial evidence for her RFC finding. The ALJ looked at the medical records and other evidence as well as Claimant's testimony. She found that Claimant's own testimony evidenced greater capabilities than alleged. (*See* Doc. 15-2 at 49). She also found that the evidence in the record did not support Claimant's allegations of the intensity and severity of her impairments. (*See id.* at 52). A reasonable mind could accept this as a basis for the ALJ's conclusion. *See Revels*, 874 F.3d at 654. Therefore, this Court finds that the ALJ committed no error in her RFC determination.

/
/
/
/
/

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 25th day of July, 2023.

James A. Teilborg
Senior United States District Judge